UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CYNTHIA TONN,

        Plaintiff,

        v.                      Case No. 20-C-1491

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff Cynthia Tonn filed this action for judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Tonn contends that the decision of the administrative law judge (ALJ) is flawed and requires reversal for a number of reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

**BACKGROUND**

Tonn filed an application for a period of disability and disability insurance benefits on October 18, 2018, and filed an application for supplemental security income on March 7, 2019. In both applications, Tonn alleged disability beginning August 28, 2018. She listed type 2 diabetes, asthma, depression, anxiety/panic disorder, chronic cervical spine pain and headaches, chronic lumbar spine pain, recurring carpal tunnel syndrome, chronic right shoulder pain, chronic allergies with rhinitis and sinusitis, and recurring skin cancer as the conditions that limited her ability to work. R. 265. After her claims were denied initially and upon reconsideration, Tonn filed a

request for an administrative hearing. ALJ Arman Rouf conducted a hearing on June 17, 2020. Tonn, who was represented by counsel, and a vocational expert (VE) testified. R. 42–68.

At the time of the hearing, Tonn was 59 years old and lived in a mobile home with her boyfriend of 20 years in Peshtigo, Wisconsin. R. 44, 48. She testified that she completed high school and had several years of college. R. 48. Tonn had owned and operated a motel and bait shop with two individuals. R. 49–50. Tonn indicated that she was in charge of the management of the business and spent six to eight hours per day, seven days a week, doing bookwork. R. 50, 60. She testified that the business was unable to keep up with the mortgage payments and the motel and bait shop were sold by the bank. R. 51. Tonn reported that, in a typical eight-to-ten-hour workday, she would spend three hours walking and standing and the rest of the time sitting. R. 52.

When the ALJ asked what conditions affected her ability to work, Tonn responded that she has been trying to keep her diabetes under control, she does not handle stress well, she has chronic lower back pain, she has flare ups from her irritable bowel syndrome, she has sciatic flares that make it difficult for her to walk or stand, and she had numerous surgeries that require follow up at physical therapy. R. 52–53. She testified that walking for longer than 15 to 20 minutes and standing for longer than 15 to 20 minutes aggravates her back pain. R. 54–55. Tonn also indicated that she suffers from severe neck pain, neck pinching, and headaches. R. 55. As to her typical day, Tonn testified that, depending on whether she has a severe headache or back pain, she does a little housework in the morning, including dishes, dusting, vacuuming, and laundry, and then mostly watches Netflix, tries to do crossword puzzles, and socializes on Facebook. R. 57. She stated that she does some cooking, but her partner does most of the cooking because she randomly drops things and is afraid to handle hot kettles or anything in the oven. R. 58. She indicated that

2

she shovels when it snows but is not required to do yard work in summer. Tonn reported that she goes grocery shopping and fishing with her partner. *Id.* She stated that, when she fishes, she cannot hold the pole for long, so she sits and watches the wildlife. R. 59.

In a fifteen-page decision dated July 17, 2020, the ALJ concluded Tonn was not disabled. R. 21–35. Following the Agency's sequential evaluation process, the ALJ found that Tonn met the insured status requirements through June 30, 2018, and that she had not engaged in substantial gainful activity since August 29, 2018, the alleged onset date. R. 24. Next, the ALJ determined Tonn had the following severe impairments: cervical and lumbar degenerative disc disease, status-post cervical fusion with residual headaches and radiculopathy, type 2 diabetes mellitus, peripheral neuropathy, obesity, asthma, status-post right shoulder surgery, degenerative changes of the right hand, right carpal tunnel syndrome, and status post right thumb surgery. *Id.* The ALJ found that Tonn does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27.

The ALJ then determined Tonn had the residual functional capacity (RFC) to perform light work except with the following limitations: "frequently climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; and occasionally stooping, crouching, and crawling. She is limited to frequently handling and fingering with the right (dominant) upper extremity; frequently reaching overhead with the bilateral upper extremities; and frequently operating foot controls with the bilateral lower extremities. She must avoid unprotected heights and dangerous machinery and can tolerate only occasional exposure to dust, odors, fumes, and other pulmonary irritants." R. 28. The ALJ found that Tonn is capable of performing past relevant work as a small business owner. R. 34. Based on these findings, the ALJ concluded Tonn was not under a disability from August 29, 2018, through the date of the decision. R. 35. The ALJ's decision became the final decision

of the Commissioner when the Appeals Council denied Tonn's request for review. Thereafter, Tonn commenced this action for judicial review.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f).

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether

the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

### A. Evaluation of Medical Opinion Evidence

Tonn asserts that the ALJ erred in evaluating the medical opinions of Consultative Examiner Kevin Rosteing, M.D.; Consultative Examiner A. Neil Johnson, M.D.; Nurse Beth Goetzman, N.P.; and two state agency reviewing physicians, Mina Khorshidi, M.D., and Douglas Chang, M.D. Under the new regulation, an ALJ is not required to give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinions by considering the following factors: supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2).

Dr. Rosteing completed a consultative examination in April 2019. R. 681–88. Dr. Rosteing discussed each of the impairments Tonn complained of, including diabetes mellitus type 2, cervical spine, lumbar spine, headaches, carpal tunnel syndrome, right shoulder, squamous cell carcinoma, and chronic allergies. He concluded that Tonn had only moderate limitations due to her carpal tunnel syndrome and did not have any limitations due to the other seven conditions. R. 687–88. Dr. Rosteing opined, "Based on the examination, this patient has the following limitations at any given time: sit (limited to 38 minutes), stand (limited to 30 minutes), walk

(limited to 1000 feet), lift (limited to 15 lbs), carry (limited to 15 lbs), reach (unlimited), grip or grasp (limited to 21 kg), travel (unlimited), see (unlimited), hear (unlimited), and speak (unlimited)." R. 688.

The ALJ found Dr. Rosteing's opinion was not persuasive. He noted that Dr. Rosteing opined that the only limiting condition is Tonn's carpal tunnel syndrome, which is markedly inconsistent with the extreme limitations set forth in his opinions, including that Tonn's sitting is limited to 38 minutes, her standing is limited to 30 minutes, and her walking is limited to 1,000 feet. The ALJ explained that limiting Tonn to light work more than adequately accounts for her severe impairments and reduced function and that the additional limitations in the RFC are warranted by Tonn's numerous impairments and complaints of persistent symptoms. R. 33.

Tonn argues that the ALJ failed to explain how Dr. Rosteing's opinion was inconsistent with the overall record. But the ALJ noted that Dr. Rosteing's extreme limitations were inconsistent with his own examination findings. The ALJ considered the evidence in the record related to her cervical and lumbar degenerative disc disease, status post-cervical fusion with residual headaches and radiculopathy; type 2 diabetes mellitus; peripheral neuropathy; obesity; asthma; status-post right shoulder surgery; degenerative changes of the right hand; right carpal tunnel syndrome; and status post right thumb surgery. After summarizing the record, he explained that lifting and carrying heavy items, standing for long periods, and performing certain postural activities may exacerbate Tonn's symptoms of her musculoskeletal impairments and limited Tonn to light work. The ALJ also explained that her right upper extremity impairments were accommodated with the restriction to frequent handling and fingering with the right (dominant) upper extremity and that her neck impairment and shoulder impairments warrant the limitation to frequent reaching overhead with the bilateral upper extremities. R. 32.

7

Nurse Goetzman completed a medical source statement form on July 24, 2019. R. 1026–29. She noted that Tonn's symptoms included "widely fluctuating blood sugar, difficult to concentrate, chronic variable pain of neck and low back ranging from 3/10 – 10/10." R. 1026. She indicated that Tonn could walk one to two city blocks without rest or severe pain, that she could sit for 20 minutes at one time and sit for about two hours in an eight-hour workday, and that she could stand for 15 minutes at one time and stand/walk for less than two hours in an eight-hour workday. R. 1027. Nurse Goetzman stated that Tonn would need to take unscheduled breaks several times per day lasting 15 to 30 minutes. *Id.* She checked boxes indicating that Tonn could rarely lift less than ten pounds and never lift ten or more pounds; rarely twist; occasionally climb stairs; and never stoop (bend), crouch/squat, and climb ladders. R. 1028. Nurse Goetzman indicated that Tonn had significant limitations with reaching, handling, and fingering; could never use her hands to grasp, turn, or twist objects; could never use her fingers for fine manipulation; and could only use her arms for reaching in front of her body or overhead for 10% of an 8-hour workday. *Id.* She checked the box indicating that Tonn would be off task 25% or more of the day and would be absent more than four days per month. R. 1029. Nurse Goetzman stated that Tonn's vision is reduced due to diabetic complications and that humidity, dust, and fumes would be detrimental due to her asthma and allergies. *Id.*

The ALJ found Nurse Goetzman's opinion was not persuasive. The ALJ explained:

> Ms. Goetzman's opinion is extreme in nature and not supported by the objective evidence. The opinion about standing, walking, and sitting is inconsistent with the evidence showing the claimant retained at least four out of five strength in all extremities, mostly intact sensation, and normal coordination. While she reported some ongoing complaints of pain and loss of motion, she maintained reasonable physical function with routine treatment. The opinion about excessive shifting, breaks, off task behavior, and absences is neither explained nor supported by the evidence. Rather, the claimant typically attended medical appointments, and there is no documentation from providers that she was off task excessively during examinations, or that she shifted positions excessively. The postural and

8

manipulative limitations are excessive in comparison to the physical examination findings, which showed reasonable strength, sensation, and coordination. Finally, the opinion about low stress work and emotional factors conflicts with the evidence showing the claimant's mental impairments are adequately managed with medication, explained in detail above.

R. 34. Tonn asserts that the ALJ failed to address what Tonn considers the "main reason" for Nurse Goetzman's opinion: Tonn's uncontrolled blood sugars. Pl.'s Br. at 25, Dkt. No. 18. Although Nurse Goetzman lists "widely fluctuating blood sugar" as one of Tonn's symptoms, there is no basis to conclude that it was the "main reason" for her opinion. Tonn does not explain how her uncontrolled blood sugar results in the extreme limitations Nurse Goetzman found, and the ALJ discussed Tonn's diabetes and difficulty with controlling her blood sugar throughout his decision. R. 29–33. He noted that "the record reflects that she was not always compliant with her provider's recommendations during the relevant period." R. 31. More specifically, he noted that in May 2020, "she reported that she was not taking her insulin as prescribed and she was still skipping meals." *Id.* (citing Ex. 19F/53). The ALJ adequately explained how the opinions of Dr. Rosteing and Nurse Goetzman were inconsistent with the evidence in the record.

Tonn also asserts that the ALJ erred in his assessment of Dr. Johnson's report. Dr. Johnson evaluated Tonn in October 2019. R. 1250–54. After summarizing Tonn's complaints and physical examination findings, Dr. Johnson observed:

> The patient has had numerous orthopedic surgeries. She has persistent pain in her neck and back. She has arthritis of her thumbs. She has had carpal tunnel surgery. Her pinch and grip are mildly reduced, especially in the right hand. There is some numbness of the right arm and mild weakness of the arms, 4/5. I did see some mild weakness in the left leg. Note, she has had two neck surgeries and a back surgery. She seemed to have had good result from a right rotator cuff. There is clearly arthritis of the thumbs. She just had surgery on the right thumb and will be having it on the left.

R. 1253. Dr. Johnson noted Tonn had chronic pain, diabetes mellitus, a history of skin cancer, and a history of anxiety and depression. R. 1253–54. Tonn argues that the ALJ ignored Dr. Johnson's

9

opinions. The Commissioner argues, however, that Dr. Johnson's statement is not a medical opinion. The regulations define a medical statement as

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). In other words, to constitute a medical opinion, a medical source's statement must satisfy two requirements: (1) the statement must be a medical source statement about what the claimant can still do despite her limitations and (2) the statement must express the claimant's impairment-related limitations or restrictions in terms of her ability to perform certain demands of work. *See also Wallender v. Saul*, No. 20-CV-808-SCD, 2021 WL 734098, at *6 (E.D. Wis. Feb. 25, 2021). Although Dr. Johnson's report described Tonn's medical history and some of the symptoms she endorsed, he did not explain what she could still do despite her limitations or assess any impairment-related limitations in terms of her ability to perform certain work demands. For this reason, the Court concludes that Dr. Johnson's report did not contain a medical opinion under § 404.1513.

In any event, the ALJ did not ignore Dr. Johnson's evaluation. He discussed Dr. Johnson's report in his decision, stating:

> In October 2019, the claimant underwent a consultative physical examination (Ex. 17F). On examination, she was pleasant and cooperative. She walked across the room with an antalgic gait but she did not use a cane. She had severe difficulty tandem walking, but she was able to squat. She had moderate tenderness over the soft tissue of the neck and severe tenderness over the back, but there was no peripheral edema, clubbing, or cyanosis. She had good motion of the fingers 2 through 5, though there was slight loss of motion of her thumbs. She had a hard time buttoning, but her signature was reasonably good. She had mild weakness (four out of five) of the left leg and arms, but her reflexes were symmetrical and Romberg was negative.

R. 31. The ALJ then concluded that "the relatively mild objective medical findings noted above and the claimant's treatment history are simply not consistent with the allegations of disabling symptoms of her physical impairments. Rather the record reflects that the claimant reported improvement in symptoms with largely routine treatment, and managed her symptoms with treatment compliance." *Id.*

Tonn maintains that the ALJ only partially summarized Dr. Johnson's findings. She notes that the ALJ did not consider Dr. Johnson's findings that her pinch and grip were mildly reduced, had limited range of motion in the cervical and lumbar spine, had antalgic gait, and had severe difficulty tandem walking. But the ALJ explicitly noted these findings and, in any event, Tonn does not explain how these observations warranted additional restrictions beyond those found in the ALJ's RFC. The ALJ did not err in his consideration of Dr. Johnson's report.

Tonn argues that the ALJ failed to consider the consistency of the opinions of Dr. Rosteing and Nurse Goetzman and Dr. Johnson's report. But in medicine, as in everything else, truth is not determined by majority vote. As explained above, Dr. Johnson did not offer any medical opinion, and the ALJ gave sound reasons for rejecting the more extreme limitations that Dr. Rosteing and Nurse Goetzman endorsed. The alleged consistency between two unpersuasive opinions is not a

reason to adopt either one. Here, the ALJ found neither were persuasive, given their inconsistency with the record overall.

Tonn further asserts that the ALJ erred in his assessment of the state agency physicians' opinions. In April 2019, Dr. Khorshidi opined that Tonn could perform a range of medium work. She indicated that Tonn would not be able to lift more than fifty pounds. Dr. Khorshidi limited Tonn to frequent stooping and frequent fingering and handling in the right hand. She also indicated that Tonn is to avoid fumes, odors, dusts, and gases. R. 69–85. In November 2019, Dr. Chang opined that Tonn could perform a reduced range of light work. R. 122. He noted that Tonn had postural limitations due to her neck and back pain, including frequently climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; unlimited balancing and kneeling; and occasionally stooping, crouching, and crawling. R. 119–20. Dr. Chang also indicated that, due to arthritis in her right thumb, carpal tunnel syndrome, and reduced strength, Tonn was limited to frequent handling and fingering in her right hand. R. 120. He opined that Tonn should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 121.

Tonn argues that the ALJ failed to adequately determine the supportability of the opinions of the state agency physicians. But the ALJ thoroughly explained why he found that Dr. Khorshidi's opinion was not persuasive and Dr. Chang's opinions were somewhat persuasive. The ALJ concluded that Dr. Khorshidi's opinion was not persuasive "because it does not contemplate the more recent records, which warrant additional limitations." R. 33. The ALJ found Dr. Chang's opinion "somewhat persuasive." *Id.* He noted that the limitation to light work is consistent with the evidence showing degenerative disc disease and ongoing right shoulder pain, the postural limitations are consistent with the evidence showing Tonn had some reduced strength but maintained reasonable physical function, and the manipulative limitations are consistent with

Tonn's right upper extremity impairments. He explained that Tonn's neck impairment and residual right shoulder pain warrant the limitation to frequent reaching overhead bilaterally. The ALJ indicated that the environmental limitations are consistent with Tonn's history of asthma. He also considered her neuropathy, headaches, and obesity and concluded they warranted the limitation to avoid unprotected heights and dangerous moving machinery. The ALJ found that Tonn's neuropathy with slightly reduced sensation at times warrants the limitation to frequent operation of foot controls with the bilateral lower extremities. *Id.*

Tonn maintains that Dr. Chang's opinion was almost entirely reliant on Dr. Johnson's consultative examination. A review of Dr. Chang's Physical Residual Functional Capacity Assessment reveals that he merely summarized the medical records in Tonn's file, including Dr. Johnson's report. His opinion did not "entirely" rely on Dr. Johnson's statement as Tonn suggests. Although Tonn asserts that Dr. Chang failed to accurately summarize Dr. Johnson's report, the state agency consultants perform their own independent review of the medical record and are not required to explain why they have accepted or rejected the findings contained in every record. There is no error on this basis.

The ALJ followed the regulations governing the assessment of medical opinion evidence. His conclusions are adequately supported and do not necessitate remand.

**B. Credibility**

Tonn asserts that the ALJ's credibility assessment is unsupported by substantial evidence. The Social Security regulations set forth a two-step process for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the

13

intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity of work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539. "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester*, 920 F.3d at 510.

Tonn asserts that the ALJ did not consider the regulatory factors in assessing her subjective statements. After summarizing Tonn's statements about her symptoms and considering the evidence, the ALJ concluded that her medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. R. 29. The ALJ explained that Tonn's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the

14

evidence of record, including treatment records, diagnostic evidence, and the nature and scope of Tonn's reported activities, does not support them. R. 29–34. Tonn maintains that Dr. Johnson's report supported her testimony, but as explained previously, the ALJ did not err in his discussion of Dr. Johnson's report. Tonn also asserts that the ALJ did not properly consider her pain or fatigue when assessing her statements, but the citations to the record Tonn provides do not undermine the ALJ's analysis. Tonn has not shown that the ALJ's reasoning was patently wrong or that his decision lacks evidentiary support. Therefore, the ALJ's credibility determination will stand. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of January, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge